# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**SCOTT E. PAYNE,**

      **Petitioner,**

    **v.**                       **CASE NO. 2:05-CV-050**
                                             **JUDGE SARGUS**
                                             **MAGISTRATE JUDGE KING**

**DAVID BOBBY, Warden,**

      **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court on the instant petition, respondent's return of writ, and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

### I.  FACTS

This case involves the following facts, as summarized by the Tenth District Court of

Appeals:          The cases involved three robberies. The first robbery occurred at Village Petals Flower Shop; the second robbery occurred at Gracie's Flower Market; and the third robbery occurred at the State Employees' Credit Union ("SECU"). Prior to trial, appellant filed several motions, including motions to suppress evidence, identification, statements, and fingerprint evidence. A hearing was held prior to the trial and, at the conclusion, the trial court ruled that certain statements made by the co-defendant, Rodney Williams, would not come in as evidence. The trial court overruled the remaining motions. Following a trial before a jury, defendant was found not guilty of assault, but guilty on all the remaining charges. The trial court sentenced defendant to ten years as to each robbery of Village Petals, Gracie's Flower Market, Ed Maleszewski and

SECU, with an additional three years for the firearm specification as to each robbery. The court ordered that the sentences be served consecutively with each other. The total sentence amounted to 52 years.

\*\*\*

On April 25, 2001, Village Petals, a flower shop located at 573 South Grant Street, Columbus, Ohio, was robbed by two black men at approximately 3:30 p.m. The first man, later identified as defendant, pulled out a gun and told Chris Fryman, the manager, that it was a robbery. Although Fryman knew that a second man entered the store, defendant was the only person he saw. Defendant pushed Fryman close to the register and ordered him to get down on the floor. Betty Athey, who was also working at the flower shop that day, came out of the back area. Another person entered the store whom Fryman could not see. Because the person entering the store made no reaction to defendant holding the gun, Fryman assumed that the two men must be together. Defendant ordered Fryman to open the register and began asking where the safe was located. Fryman told defendant that there was no safe; however, defendant kept asking. Fryman hit the no-sale key on the register, the drawer opened and defendant began taking money out of the drawer.

Athey entered the room and the second person pushed her down on the floor next to Fryman. The second person went into the back room and began looking for the safe. After he found the safe, the second person told defendant to bring Fryman into the back room and have him open the safe. Before defendant took Fryman into the back room, he demanded Fryman's wallet. Fryman opened his wallet and gave defendant his money. Defendant continued to demand the wallet and Fryman's ID while he kept the gun pointed at the back of Fryman's head. In the back room, Fryman opened the safe and the men took things out of the safe, including the petty cash box. Defendant also demanded that Athey remove her engagement and wedding ring, which she did.

Soon after, the men left. Fryman ran to the door to see if he could see where they were going. Fryman saw two men running down the street towards Livingston Avenue and saw them jump into a van, which was facing the wrong direction. Fryman testified that the van was a Ford Aerostar, possibly white in color. Fryman later identified

2

defendant as the man who had held a gun to his face, pushed him to the ground, and taken cash out of the cash register. A fingerprint from defendant was found on the cash register as well.

Robert Behrens was driving home from work on Grant Street, heading south, when he noticed a white minivan parked the wrong way on the east side of the street. Behrens testified that he noticed two men running up the sidewalk on the west side of the street and saw them enter the white minivan. Behrens turned his own car around and, as he did so, he noticed a man sticking his head out of the door of Village Petals and he thought that something must be going wrong. The van turned around and was headed north on Grant. Behrens pulled up behind the van, memorized the license plate number, and provided that number to Fryman and to the police.

On May 11, 2001, Gracie's Flower Market, located at 573 High Street, was robbed by two black men. Mindy Bates, the owner of the flower shop, was working that day when two black men entered the store and asked her questions about delivering flowers for Mothers' Day. One of the men, later identified by Bates as Ronald Williams, asked her about jewelry available at the store. The other man, later identified by Bates as defendant, lifted up his shirt and showed Bates a handgun. Defendant ordered Bates to give him the money. Defendant grabbed Bates' arm and pushed her towards the cash register so that she could open it. Bates gave defendant money from the cash register, but he still wanted more. Bates gave him $20 in change from a file drawer. Williams stayed on the other side of the counter while defendant emptied the cash register. According to Bates' testimony, defendant kept the gun pointed at her back while he was removing the money. The men continued to ask Bates for more money; however, she explained to them that she had gone to the bank that day and that there was no more money in the store. Bates' mother was in the back room where the two men could not see her during the robbery. She managed to place a telephone call. Defendant ordered Bates to get on the floor behind the counter, all the while keeping the gun pointed at her neck while she was moving. Bates heard the indicator on the door, which sounds when someone enters or exits and then saw only one set of feet. Bates heard the door indicator a second time and knew that both men were gone.

Eric Bush was walking home from work down South High Street when he noticed a van sitting at the stop sign at the corner of Blenkner and High Streets. Bush then saw two men exit the flower

3

shop and quickly get into the van. The van drove north on High Street. Bush said that the van was a Ford Aerostar, off-white in color, and that the two men were black. Bush wrote down the license plate number because he thought the situation was odd. Bush left a message at the flower shop with the license plate number and also gave the license number to detectives who called him later.

The license plate from both robberies is registered to an address on Champion Avenue and the police began watching that address looking for the white van. On May 11, 2001, within hours of the robbery at Gracie's Flower Market, an officer noticed a van near Champion and Livingston Avenues. The occupants of the van were ordered out at gunpoint because the police were treating it as a felony traffic stop. Two adult women and several children were in the van and the police realized that these were not the people who had committed the two robberies. Marilyn Williams, Williams' sister, was driving the van. Another occupant informed Officer Kaufman that a family member and a friend had driven the van earlier that day and were at a house at 693 Bedford Avenue. Officers Kaufman and Boespflug proceeded to the address on Bedford Avenue. Defendant and Williams were found at that address and were arrested. Officer Wright contacted Mindy Bates and told her that the police had someone they wanted her to look at. Officer Wright brought Bates to the place where defendant was and she identified him as the man who had robbed at gunpoint. Bates also identified Williams. Both defendant and Williams were arrested; however, they were released ten days later.

On May 29, 2001, the SECU, located at 20 East Long Street, was robbed by two black males. The men ordered the employees and customers down on the floor and told them that this was a robbery. One man jumped behind the teller line and went through the manager's office door. The other man had a sawed-off shotgun which he pointed at the heads of the tellers. The men took money out of the teller drawers. One of the teller drawers was locked and the men tried to get one of the tellers to unlock it, but that teller did not have a key. The manager gave the men a key but it became stuck and one of the tellers offered to help. Ed Maleszewski was entering the building as the robbery was taking place. Maleszewski backed out the door, stepped around the corner, and used his cellular phone to dial 911. As he was calling, the men came out of the building, one man ran around the corner and told Maleszewski to give him the camera. Maleszewski did not have a camera and the man grabbed his arm.

4

The other man came around the corner with a gun. Maleszewski gave the men what he had and saw them leave in a white older model LTD automobile.

Later that same day, Trooper Bernard of the Ohio State Highway Patrol reported to the scene of a traffic accident at Exit 186 off Interstate 70 in Guernsey County. Appellant had been driving the car when the brakes apparently failed and the car crashed. Williams had a cut on his leg and appellant was not injured. Williams was in possession of a black duffel bag which he kept near him while they were questioned by the patrol. Defendant was ultimately arrested for driving without a valid driver's license and Williams was about to be transported by emergency medical personnel for treatment. Officer Bernard testified that Williams had refused to tell him whose car they had been driving. He testified further that the men had seemed nervous and that he felt that something was wrong. Defendant told him that Williams' name was "Charlie Brown." During his testimony, Officer Bernard noted that defendant and Williams did not voluntarily offer any information, that Williams would not tell him whose car it was, that defendant said it was his brother's car, but would not give his brother's name, that the two men were acting nervous, and that, after defendant identified Williams as "Charlie Brown," Officer Bernard did not know who Williams really was. The black bag was within reach of Williams, and Williams was about to be transported to the hospital. Officer Bernard decided that, before Williams left the scene, the bag should be checked. Upon opening the bag, Officer Bernard moved a black sweatshirt out of the way and found large amounts of United States currency with bank wrappers around it and later found dye packs. It was later determined that the money and dye packs had come from SECU.

Exhibit 20 to Return of Writ.

## II. PROCEDURAL HISTORY

Petitioner was indicted by the May 2001 term of the Franklin County grand jury in Case No. 01CR06-3300 on four counts of aggravated robbery, in violation of O.R.C. §2911.01, eight counts of robbery, in violation of O.R.C. §2911.02, three counts of kidnapping, in violation of O.R.C. 2905.01, and assault on a police officer, in violation of O.R.C. §2903.13, with firearm specifications.

5

Exhibit 1 to Return of Writ. Additionally, in Case No. 01CR06-3339, petitioner was indicted on two counts of aggravated robbery, in violation of O.R.C. §2911.01, four counts of robbery, in violation of O.R.C. §2911.02, kidnapping, in violation of O.R.C. §2905.01, and having a weapon while under disability, in violation of O.R.C. §2923.13, with firearm specifications. Exhibit 2 to Return of Writ. Pursuant to the State's motion, the cases were consolidated for trial. Exhibits 3 and 20 to Return of Writ. While represented by counsel, petitioner proceeded to jury trial and was found guilty of all charges except assault. On May 28, 2002, petitioner was sentenced to an aggregate term of fifty-two years. Exhibits 12, 13, and 13A to Return of Writ. Still represented by the same attorney, petitioner filed a timely appeal of his convictions to the Tenth District Court of Appeals. He asserted the following assignments of error:

> 1. The trial court erred and abused its discretion when it overruled defendant-appellant's motion to sever the trial of Village Petals, Gracie's Flowers and the State Employees Credit Union, and the failure to do so denied defendant-appellant a fair trial, violating his rights under the 5th and 14th Amendments to the Constitution of the United States, and Article I, Section 16 of the Ohio Constitution.

> 2. The trial court erred and abused its discretion when it overruled defendant-appellant's motion to sever his trial from co-defendant, Ronald Williams.

> 3. The trial court erred and abused its discretion in overruling defendant-appellant's motion to suppress the suggestive identification of witnesses in the Village Petals robbery and Gracie's Flowers, in violation of the 5th and 14th Amendments to the Constitution of the United States and Article I, Section 16 of the Ohio Constitution.

> 4. The trial court erred and abused its discretion when it overruled defendant-appellant's motion to suppress the search of a black bag transported to Guernsey County by defendant-appellant, in violation of the 4th, 5th and Article I, Section 14 of the Ohio Constitution and Rules of Criminal Procedure.

5. The trial court erred and abused its discretion when the court failed to sustain the Rule 29 motion made at the end of the State's case and the end of the case, thereby denying defendant-appellant a fair trial guaranteed by the 5th and 14th Amendments to the Constitution of the United States and Article I, Section 16 of the Ohio Constitution.

6. The trial court erred and abused its discretion in overruling defendant-appellant's objection to fingerprint evidence, State's expert's testimony as to the match of defendant-appellant's prints with those lifted from Gracie's Flowers, no scientific evidence or basis having been offered or accepted in this court or by any scientific body who validated such procedure, resulting in a denial of a fair trial guaranteed by the 5th and 14th Amendments to the Constitution of the United States and Article I, Section 16 of the Ohio Constitution.

7. The trial court erred and abused its discretion in admitting evidence over defendant-appellant's objection, including testimony and exhibits, thereby denying defendant-appellant a fair trial guaranteed by the 5th and 14th Amendments to the Constitution of the United States and Article I, Section 16 of the Ohio Constitution.

8. The State was guilty of prosecutorial misconduct in misstating and citing evidence not in the record, such conduct constituting plain error and denying defendant-appellant a fair trial guaranteed by the 5th and 14th Amendments to the Constitution of the United States and Article I, Section 16 of the Ohio Constitution.

9. The convictions of Scott Payne relating to the State Employees Credit Union and Ed Maleszewski were not supported by the evidence and are against the manifest weight of the evidence, thereby violating defendant-appellant's rights under the 5th and 14th Amendments to the Constitution of the United States and Article I, Section 16 of the Ohio Constitution.

10. The trial court erred and abused its discretion in imposing maximum sentences, running sentences consecutively, failing to merge counts and in failing to make necessary findings as well as imposing a sentence contrary to the principles and the purpose of the

sentencing act.

> 11.  The trial court erred and committed plain error when it failed to give the complete charge as to eyewitness identification contained in Ohio jury instructions, Section 405.20(5) and the cautionary instruction as to unreliability of eyewitness identification required by *United States v. Telfaire*, 469 F.2d 552, 558 (1972).

Exhibit 17A to Return of Writ.  On September 13, 2002, the appellate court affirmed the judgment of the trial court.  Exhibit 20 to Return of Writ.  Still represented by counsel, petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court in which he raised the same propositions of law.  Exhibit 22 to Return of Writ.  On January 21, 2004, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  Exhibit 24 to Return of Writ.

On January 18, 2005, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1.  The trial court's refusal to grant a motion to sever three robberies occurring on three separate dates, with differing facts, violated petitioner Scott Payne's right to a fair trial, guaranteed by the 5th and 14th Amendments to the Constitution of the United States.

> 2.  The trial court refused to grant petitioner's motion to sever his trial from a co-defendant who was a convicted felon who offered an unbelievable explanation for possession of robbery proceeds from the credit union, such denial being a denial of a fair trial, a violation of petitioner's rights guaranteed under the 5th and 14th Amendments to the Constitution of the United States.

> 3.  The trial court violated petitioner's rights guaranteed by the 5th and 14th Amendments to the Constitution of the United States by

refusing to suppress suggestive identification in two of three robberies.

4.  The trial court violated petitioner's rights under the 4th, 5th, and 14th Amendments to the Constitution of the United States when the court failed to suppress an unlawful search of a duffel bag.

5.  The trial court violated petitioner's right, under the 5th and 14th Amendments to the Constitution of the United States, to a fair trial when it permitted the jury to consider petitioner's guilt and find the petitioner Scott E. Payne guilty in the State Employees Credit Union and the charges involving Ed Maleszewski, there being no evidence to support any of the charges.

6.  The trial court violated petitioner's right guaranteed by the 5th and 14th Amendments to the Constitution of the United States to a fair trial when it admitted fingerprint evidence without having scientific evidence to validate the procedure and scientific evidence to validate the use of fingerprint evidence.

7.  The trial court violated petitioner's rights under the 8th, 5th and 14th Amendments to the Constitution of the United States when it imposed a maximum consecutive sentence of 52 years for a defendant who had no previous felony record, and such sentence being contrary to sentencing guidelines.

8.  The prosecutor was guilty of prosecutorial misconduct by misstating the evidence, denying petitioner a fair trial guaranteed by the 5th and 14th Amendments to the Constitution of the United States.

9.  The trial court denied petitioner, Scott E. Payne, a fair trial guaranteed by the 5th and 14th Amendments to the Constitution of the United States when it admitted pure speculation as to identity, hearsay evidence by an unidentified female, allowing the State to explore the facts of co-defendant Williams' prior robbery.

10.  Petitioner was denied due process of law under the 5th, 6th and 14th Amendments to the Constitution of the United States when the trial court relied on findings that enhanced petitioner's sentence

9

> beyond the minimum and further enhanced the sentence by authorizing consecutive sentences, contrary to the holding in *Charles C. Apprendi, Jr. v. New Jersey,* 530 U.S. 466, 147 L.Ed.2d 435, 120 S.Ct. 2348 (2000).

It is the position of the respondent that claim ten is procedurally defaulted; that claims four and seven are inappropriate for federal habeas corpus review; and that the remainder of petitioner's claims are without merit.

### III. CLAIM ONE

In claim one, petitioner asserts that he was denied a fair trial because the trial court refused to sever trial of the Village Petals robbery charges, in which evidence of petitioner's guilt included fingerprints and an eyewitness identification of petitioner, from trial on the other robbery charges against him.  Petitioner asserts:

> Th[ese] essential fact[s] tainted the two other cases.  The spill-over effect denied Payne a fair trial guaranteed by the 5th and 14th Amendments to the Constitution of the United States.

*Petition.*  The state appellate court denied this claim as follows:

> In his first assignment of error, defendant contends that the trial court erred in denying his motion to sever the cases.  Crim.R. 8(A) permits the joinder of offenses "if the offenses charged * * * are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."

> The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged are of the same or similar character. *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293. An accused may move to sever the offenses under Crim.R. 14 upon the showing of prejudice. However, for an appellate court to reverse a trial court's ruling denying a motion for severance, the defendant

10

must demonstrate that the trial court abused its discretion.

Under Crim.R. 14, the defendant has the burden of affirmatively showing that his rights were prejudiced. He must provide the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial. *Id.* at 163, 555 N.E.2d 293.

Defendant contends that he was prejudiced by the joinder of the offenses because of the fingerprint evidence which was found at the scene of the Village Petals robbery. Defendant contends that, once the jury knew that his fingerprint had been left at the scene at one of the robberies, the jury would automatically find him guilty of all the charges.

Trial courts are given considerable latitude in determining whether a severance is warranted and appellate courts review the decision for an abuse of discretion. *State v. Wilkerson,* Franklin App. No. 01AP-1127, 2002-Ohio-5416. In considering whether a trial court has abused its discretion, the test is whether a joint trial is so manifestly prejudicial that the trial judge is required to exercise his discretion in only one way--by severing the trial. The defendant must show clear, manifest and undue prejudice in a violation of a substantive right resulting from the failure to sever. *United States v. Lane* (1986), 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814.

After reviewing defendant's argument and the evidence, this court concludes that defendant has not demonstrated that the trial court abused its discretion. The record indicates that defendant was identified by witnesses at both Village Petals and Gracie's Flower Market and that the picture taken from the security camera at the SECU depicts a man who bears a resemblance to defendant just moments before the robbery occurred. The offenses charged and tried in the present case were of the same or similar character as each aggravated robbery was committed with the use of a firearm. Further, the state had argued that the three aggravated robberies were part of a course of criminal conduct. Additionally, as noted previously, the contents of the black bag is admissible against both men. This court does not find that joinder of the offenses was so manifestly prejudicial that severing the offenses was required. Defendant's first assignment of error is not well-taken and is overruled.

11

Exhibit 20 to Return of Writ.

Petitioner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir.1997). Under 28 U.S.C. §2254(e)(1), the state court's factual findings are entitled to a presumption of correctness:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

*Id*. Additionally, the state court's decision is binding on this Court unless that decision is contrary to or involves an unreasonable application of clearly established federal law as determined by the United States Supreme Court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached

12

> by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States.  28 U.S.C. §2254(a).  A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984): *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988).  A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure.  *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).  "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition.  *Id*. (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).  Only where the error resulted in the denial of fundamental fairness will habeas relief be granted.  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).  Such are not the circumstances here.

> Improper joinder will result in a constitutional violation "only if it results in prejudice so great as to deny a defendant his ... right to a fair trial." *Lucero v. Kerby,* 133 F.3d 1299, 1314 (10th Cir.1998) (quotation omitted). Such prejudice may arise when there is a great disparity in the amount of evidence supporting the charges or when the jury is likely to confuse the evidence or infer a criminal disposition on the part of the defendant. *Id.* at 1314-15.

*Webber v. Scott*, 390 F.3d 1169, 1177-78 (10th Cir. 2004).  For the reasons discussed by the state

13

appellate court, claim one is without merit.

## IV.  CLAIM TWO

In claim two, petitioner asserts that he was denied a fair trial because the trial court refused to sever his trial from co-defendant, Ronald Williams.  Petitioner asserts that his joint trial with Williams was constitutionally prohibited because Williams

> gave an impossible explanation of how he had a duffle bag with $90,000.00 from the credit union.  He said he found the money in a car he bought on the street the day of the robbery.

> Defendant Williams' record, his explanation of robbery proceeds, the use of his sister's Aerostar van as the alleged getaway car and his conviction of armed robbery tainted petitioner Payne's right to a fair trial guaranteed under the 5th and 14th Amendments to the Constitution of the United States.

*Petition.*

The state appellate court denied this claim as follows:

> In his second assignment of error, defendant contends that the trial court erred and abused its discretion where it overruled his motion to sever his trial from that of his co-defendant, Ronald Williams. Crim.R. 8(B) permits the joinder of defendants "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct. Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count." The law favors the joinder of defendants and the avoidance of multiple trials because joinder conserves judicial and prosecutorial time, lessens the expenses of multiple trials, diminishes the inconvenience to witnesses, and minimizes the possibility of incongruous results from successive trials before different juries. *State v. Thomas* (1980), 61 Ohio St.2d 223, 400 N.E.2d 401.

> In order to obtain a severance, defendant needed to affirmatively demonstrate prejudice by the joinder. Crim.R. 14; *Thomas, supra.* In

14

that regard, defendant was required to furnish the trial court with sufficient information so that the trial court could weigh the consideration favoring joinder of Williams against those factors which preserve defendant's right to a fair trial. *Wilkerson,* at ¶ 33. As this court noted in *Wilkerson,* there is a risk that information introduced against one of the co-defendants may spill over against the other defendant in every trial where defendants are tried jointly. Furthermore, a trial court does not abuse its discretion in refusing to grant severance where the prejudicial aspects of joinder are too general and speculative.

In *Bruton v. United States* (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, the United States Supreme Court held that a defendant is deprived of the Sixth Amendment right of confrontation when a facially incriminating extra-judicial statement of a non-testifying co-defendant is introduced at their joint trial, despite a trial court's instruction to the jury to consider the statement only against the co-defendant. The *Bruton* rule applies even when the co-defendant's statement does not name the defendant specifically, but, when considered in context with all of the other evidence presented at the trial, the statement significantly tends to incriminate the defendant. *State v. Moritz* (1980), 63 Ohio St.2d 150, 407 N.E.2d 1268.

In the present case, evidence was presented at the motion hearing that Williams had told one of the officers that the money in the bag came from an employer, and that he and defendant were taking the money to either Wheeling or Pittsburgh to deposit in defendant's sister's account. The trial court concluded that, if Williams was to testify, then Williams would not be permitted to state that the money was going to be put in defendant's sister's account. As such, the trial court did conclude that this potentially prejudicial statement would be kept out of evidence.

On appeal, defendant asserts that he was prejudiced by more than just the potential of Williams' statement coming into evidence. Defendant argues that Williams' prior conviction for robbery would come into evidence and that it would make his defense all the more difficult. Based upon the review of the record, defendant's argument herein and the trial court's determination to keep the statement out, this court finds defendant has not affirmatively demonstrated prejudice, nor has defendant shown that the trial court abused its discretion in overruling his motion for separate trials. As such, defendant's second assignment of error is not well-taken and is overruled.

15

Exhibit 20 to Return of Writ.  Again, the findings of the state appellate court are entitled to a

presumption of correctness.   28 U.S.C. §2254(d), (e).  Further, the record fails to reflect that the

state appellate court's decision is so unreasonable as to justify federal habeas corpus relief.  *See*

*Williams v. Taylor, supra.*

> "[W]hether the trial court erred in denying severance is generally a
> question of state law that is not cognizable on federal habeas appeal
> ... a criminal defendant has no constitutional right to severance unless
> there is a strong showing of prejudice caused by the joint trial."

*Fox v. Ward,* 200 F.3d 1286, 1292 (10th Cir. 2000), quoting *Cummings v. Evans,* 161 F.3d 610, 619

(10th Cir.1998).

> "[A]ny errors alleged in the management of a state criminal trial do
> not deny the defendant due process of law, *see, e.g.*, *Willard v.
> Pearson,* 823 F.2d 1141, 1149 (7th Cir.1987), unless they are so
> harmful to the cause of truth that, singly or cumulatively, they make
> the defendant's conviction fundamentally unfair, *see, e.g., Dudley v.
> Duckworth,* 854 F.2d 967, 972 (7th Cir.1988)." *Bell v. Duckworth,*
> 861 F.2d 169, 170 (7th Cir.1988), *cert. denied,* 489 U.S. 1088, 109
> S.Ct. 1552, 103 L.Ed.2d 855 (1989). More specifically,

> "... In reviewing state court determinations on severance, we will not
> grant habeas relief unless the petitioner shows both that the trial
> judge abused his or her discretion in refusing to sever the trial and,
> further, that the refusal resulted in a trial that was fundamentally
> unfair.... Joint trials may be found fundamentally unfair if
> codefendants present true 'mutually antagonistic defenses' or if the
> 'actual conduct' of the defense of one defendant prejudices another."
> *Madyun,* 852 F.2d at 1033-34 (citations omitted). *See also Stomner
> v. Kolb,* 903 F.2d 1123, 1127 (7th Cir.), *cert. denied,* 498 U.S. 924,
> 111 S.Ct. 305, 112 L.Ed.2d 258 (1990).

*Lewis v. Hutch*, 964 F.2d 670, 676 (7th Cir. 1992.  Again, and for the reasons discussed by the state

appellate court, such are not the circumstances here.  *See also United States v. Cope*, 312 F.3d 757,

780 (6th Cir. 2002), discussing the issue in relation to Rule 14 of the Federal Rules of Criminal

Procedure:

> For the sake of promoting efficiency and avoiding the potential for
> inconsistent verdicts, joint trials of defendants who are indicted
> together are actually encouraged rather than discouraged. *Zafiro v.
> United States,* 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317
> (1993); *see also* Fed.R.Crim.P. 8(b) (stating that "[t]wo or more
> defendants may be charged in the same indictment ... if they are
> alleged to have participated in the same act or transaction or in the
> same series of acts or transactions constituting an offense or
> offenses"). This is especially true when two defendants are accused
> of participating in a conspiracy or joint scheme. *United States v.
> Weiner,* 988 F.2d 629, 634 (6th Cir.1992).

> ... "Severance is required 'only if there is a serious risk that a joint
> trial would compromise a specific trial right of one of the defendants,
> or prevent the jury from making a reliable judgment about guilt or
> innocence.' " *Walls,* 293 F.3d at 966 (quoting *Zafiro,* 506 U.S. at
> 539, 113 S.Ct. 933). A joint trial of codefendants who present
> mutually antagonistic defenses is not prejudicial per se. *Zafiro,* 506
> U.S. at 538, 113 S.Ct. 933. Moreover, a trial court's limiting
> instructions may "cure" such prejudice. *Id.* at 539, 113 S.Ct. 933.

*See also Hutchsion v. Bell*, 303 F.3d 720, 731 (6th Cir. 2004).

Claim two is without merit.

## V.  CLAIM THREE

In claim three, petitioner asserts that he was denied a fair trial due to impermissibly tainted

in-court identifications of him as the perpetrator of the Gracie Flowers and Village Petals robberies.

The state appellate court denied this claim as follows:

> [D]efendant contends that the trial court erred and abused its
> discretion in overruling his motion to suppress the identification of
> witnesses in the Village Petals and Gracie's Flower Market robberies.
> Defendant challenges the "show up" identification of him by Mindy
> Bates, as well as the photo arrays shown to Chris Fryman and Betty
> Athey.

> Defendant contends that the trial court erred in overruling his motion
> to suppress identification, as the identification procedure was

17

unnecessarily suggestive and denied defendant his due process of law. The Fifth and Fourteenth Amendments to the United States Constitution prohibit the admission of unreliable identification testimony derived from suggestive identification procedures; however, an impermissibly suggestive procedure alone does not require exclusion, but, rather, the identification process must be so unreliable under the circumstances as to create a substantial likelihood of irreparable misidentification before an identification will be excluded. *See State v. Curry,* Cuyahoga App. No. 80148, 2002-Ohio-2260.

In *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401, the United States Supreme Court held that, even though a show-up procedure is suggestive, the identification may be reliable under the totality of the circumstances. In *Neil,* the court set forth the standards for the admissibility of testimony concerning an out-of-court identification by identifying the factors that should be considered in determining the likelihood of misidentification, as follows: the opportunity of the witness to view the criminal at the time of the crime; the witness' degree of attention; the accuracy of the witness' prior description of the criminal; the level of certainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation. As such, identifications made subject to an otherwise impermissibly suggestive procedure are admissible where the identification itself is nevertheless deemed to be reliable. The central question is whether, under the totality of the circumstances, the identification is reliable even though the confrontation procedure was suggestive. *State v. Garner* (1995), 74 Ohio St.3d 49, 656 N.E.2d 623.

In the present case, Mindy Bates, the owner of Gracie's Flower Market, was given the opportunity to identify defendant after he was apprehended at the Bedford Avenue address. Bates had indicated that the robbers were in her store for a total of three or four minutes. She indicated that, during the time they were in the store, she was basically one-on-one with them and that the shop itself is very small. Bates spoke with them and answered their questions before defendant pulled the gun and announced the robbery. The trial court found that this was an extended period of time for her to view the robbers. The trial court also noted that Bates had been waiting on defendant and Williams as if they were customers and had obviously been paying attention to them. In her description of the robbers, she noted that one of them was shorter and stockier, while the other had more of a sculptured face. She also noted the scar on Williams' arm, their

18

general clothing, and defendant's boots. At the show-up, Bates indicated that she was certain that they were the people who had robbed her. Lastly, the robbery itself took place around 4:00 p.m., and the show-up identification occurred between 6:00 and 7:00 p.m.

This court has also reviewed the testimony of Officer Wright who took Bates to the show-up. Based upon his testimony, and the testimony of Bates, it is clear that Bates had been informed that the police wanted her to look at one or more men to determine whether they were the men who had robbed her. The police in no way suggested to Bates that they had apprehended men who they believed may be the men who had robbed her.

Looking at the totality of the circumstances, this court concludes that the trial court did not err and abuse its discretion when it overruled his motion to suppress the show-up identification by Bates.

Defendant also challenges the photo arrays which were shown to Fryman and Athey. He contends that they were "obviously meaningless." Defendant contends that it was obvious that the pictures in the photo array were mug shots and that little was done to ensure an impartial identification. This court disagrees.

Both Fryman and Athey identified defendant when they were shown the photo array. Defendant appears to argue that, since it was apparent that the photos came from mug shots and since neither Fryman nor Athey could identify defendant in court, the photo array was obviously not impartial. The trial court had the opportunity to view the photo array and the photo array itself was not presented as evidence during the trial. This court finds that defendant has not demonstrated that the trial court erred and abused its discretion by permitting the testimony from both the police officer, as well as Fryman and Athey, that they had identified defendant from the photo array.

Defendant also challenges the identification testimony of Jacob Sahle. Sahle testified that the police approached him after the robbery at the SECU and asked him if he could identify anyone in the photo array. Sahle had noticed a white car that pulled into his lot to park. He informed the driver that it was a paid parking lot and the driver left. The police showed him a photo array and he identified a picture of defendant who he said seems like the man who had been driving the car.

19

>Defendant does not challenge the photo array itself. However, defense counsel had the opportunity to cross-examine Sahle on his recollection of the events and the tentative nature of his identification to the photo arrays. This court concludes that defendant's argument goes to the weight of the evidence and does not demonstrate that the trial court erred and abused its discretion.

>Defendant's third assignment of error is overruled.

Exhibit 20 to Return of Writ. Petitioner has failed to demonstrate that the state court's decision is so unreasonable as to justify federal habeas corpus relief. *See* 28 U.S.C. §2254(d), (e); *Williams v. Taylor, supra*.

Identification testimony based upon a pre-trial procedure that is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" violates a criminal defendant's right to due process. *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir. 1986), quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968); *see also Stovall v. Denno*, 388 U.S. 293 (1967). "It is the likelihood of misidentification which violates a defendant's right to due process." *Neil v. Biggers*, 409 U.S. 188, 198 (1972). The Court first must determine whether the pre-trial identification procedure employed was unduly suggestive. *Ledbetter v. Edwards*, 35 F.3d 1062, 1070-1071 (6th Cir. 1994). If so, the Court must then consider the totality of the circumstances in order to determine if the identification is nevertheless reliable. *Id*., at 1070, citing *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992); *Neil v. Biggers, supra,* 409 U.S. t 199-200; *Thigpen v. Cory, supra*, 804 F.2d at 895. In making this determination, the Court must consider the following five factors:

>(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of observation; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when confronting the defendant; and (5) the length of time between the

crime and the confrontation.

*Ledbetter v. Edwards, supra,* 35 F.3d at 1070, citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *Neil v. Biggers, supra*, 409 U.S. at 199-200.

A show-up, of the type used by police when Bates identified petitioner as a perpetrator of the Gracie's Flowers robbery, is inherently suggestive. *Summit v. Bordenkircher*, 608 F.2d 247, 252 (6th Cir. 1979). "When only one person is presented to a witness, there is a natural tendency for the witness to feel obligated to provide a positive identification." Nonetheless, upon review of the record and for the reasons discussed by the state appellate court, this Court likewise concludes that, when viewing the totality of circumstances, Bates' identification of petitioner is constitutionally permissible.

Two men robbed Gracie's Flower Market at approximately 4:00 p.m. *Transcript*, at 757. The store was well lit and no other customers were present. *Id.* Bates said:

> One [of the robbers] stayed at the front counter looking at the jewelry. The other one kind of walked back and forth and talked about delivery, and Mother's Day, then all of a sudden one spun around. I could see him lift up his shirt and pull out a gun. The other one stayed in the front of the front counter closer to the door.

*Id.*

> I'm behind the front counter asking questions, or answering questions about the jewelry that's on the front counter. And then, the other one is going from the coolers that are in front of the store, the big display cooler in the back asking questions about delivering flowers for Mother's Day. And how much it is, you know, that kind of stuff.

*Id.*, at 789. Notably, Bates recognized both men as having been in her store two days earlier. *Id.*, at 790. She described the man at the counter who fingered the jewelry (petitioner's co-defendant) as "shorter and stockier" with a "full face" and a scar on his arm. *Id.*, at 758. She said petitioner had a gun and a "sculptured face." *Id.* It was a handgun. She described the gun as silver and

"brushed," not shiny.  *Id.*, at 759.  The entire incident took about three or four minutes, *id.*, at 761;

however, Bates was able to observe the faces of both men who robbed her.  *Id.*, at 761, 763.  During

that time, petitioner stood within a few feet of her.  *Id.*, at 1497.  About two hours after the robbery,

Bates went with Officer Wright in his cruiser "to possibly identify the robbers."  *Id.*, at 766.

> [T]hey just said there's somebody in that cruiser that we want you to
> look at.
>
> Q.  Did he tell you that you were going to identify the man with the
> gun?
>
> A.  No....

*Id.*, at 769.

*Id.*, at 807.  Bates immediately recognized petitioner as the man with the gun.  *Id.*  She recognized

his face and his boots.  *Id.*  He wore brown work boots.  *Id.*, at 770.  She was 150% sure of her

identification of petitioner as the armed robber.  *Id.*, at 772; 780.

> The face is how I knew for sure it was the person that was in the
> shop.

*Id.*, at 811-812.  She had no doubt of her out-of-court identification of petitioner.  *Id.*, at 1519.  Bates

also was certain of her in-court identification of petitioner.  *Id.*, at 1526.

Thus, the record indicates that Bates had an adequate opportunity to observe the individuals

who robbed her.  Additionally, she thought they were potential customers, and was assisting them,

at least initially, while not under any unusual stress.  The store was well lit, and both perpetrators

were in close proximity to Bates during the robbery.  Bates' descriptions of the offenders were fairly

detailed, and she recognized both men as having previously been in her store.  Also, the time period

between the initial confrontation and her subsequent identification of petitioner was short.  Finally,

Bates never exhibited any uncertainty regarding her identification of petitioner.  To the contrary, she

expressed certainty of her identification.  In view of all of the foregoing, this Court agrees with the conclusion of the state appellate court that, under the totality of circumstances, Bates identification was not constitutionally prohibited.

Petitioner also asserts that out-of-court identifications of him by Chris Fryman and Betty Athey from a photo line up as a perpetrator of the Village Petals robbery are constitutionally prohibited because Fryman and Athey subsequently were unable to identify petitioner in court, and because Fryman and Athey knew that mug shots were used to create the photo line-up.  *Petition*, at 5.  Petitioner's argument is unpersuasive.  Simply because Fryman and Athey later were unable to identify petitioner in court does make their prior identification of him from the photo line up inadmissible.  *See, e.g., Howard v. Bouchard*, 405 F.3d 459, 484-85 (6th Cir. 2005):

> [A]n earlier failure to identify, or even a positive identification of a different suspect, does not require exclusion of an in-court or pretrial identification, if otherwise reliable. *See, e.g., United States v. Meyer*, 359 F.3d 820 (6th Cir.2004) (allowing in identification despite earlier failure to identify defendant in a photo array); *United States v. Black*, 412 F.2d 687, 689 (6th Cir.1969) (same); *United States v. Causey*, 834 F.2d 1277 (6th Cir.1987) (same); *United States v. Hamilton*, 684 F.2d 380, 383 (6th Cir.1982) (same); *United States v. Dobson*, 512 F.2d 615, 616 (6th Cir.1975) (in pre-*Manson* case, allowing in-court identification testimony despite witness's selection of a different person earlier in his testimony).
>
> An earlier failure to identify can be considered in judging the weight of the in-court identification and may be considered as one factor affecting the reliability of the earlier identification. Standing alone, it does not make the earlier identification unreliable under the *Biggers/Manson* due process inquiry.

*Id*.  Further, and contrary to petitioner's allegations here, nothing in the record indicates that the photo line-up was unduly suggestive.

> This Circuit has... held that including one color photograph of a criminal defendant among a group of black-and-white photographs

23

is unduly suggestive. *See Crozier*, 259 F.3d at 510 (citing *United States v. Ayendes*, 541 F.2d 601, 605 (6th Cir.1976) (finding that use of a single color picture of each defendant with no police information as depicted in the remaining black-and-white "mug shots" was suggestive, but "not so impermissibly suggestive as to render it highly likely that they led to irreparable misidentifications"), and *O'Brien v. Wainwright,* 738 F.2d 1139, 1140 (11th Cir.1984) (holding that use of defendant's color photo among five other black-and-white "mug shots" was impermissibly suggestive)). A defendant's photograph that is the only one lacking "mug shot" lines in the background, however, has been held not to be unduly suggestive. *United States v. Perry,* 991 F.2d 304, 311 (6th Cir.1993) (citing *Cikora v. Dugger,* 840 F.2d 893, 896 (11th Cir.1988) (reasoning that height markings in defendant's photograph were not unduly suggestive because it was doubtful "that anyone viewing the array would not realize that at least three, and possibly all, of the other five photographs were also 'mug shots' ")). Standing alone, minor differences in the exposure and quality of photographs in a pretrial lineup array do not establish that the array was impermissibly suggestive. *See United States v. L'Allier,* 838 F.2d 234, 240 (7th Cir.1988).

*United States v. Irorere*, 69 Fed.Appx. 231, 236 (6th Cir. 2003).

When creating a police lineup, the police are not required to "conduct a search for identical twins in age, height, weight or facial features." *Hutsell v. Sayre,* 5 F.3d 996, 1005 (6th Cir.1993) (quoting *Hensley v. Carey,* 818 F.2d 646, 650 (7th Cir.1987)). We have held that a photo of a defendant containing mug shot markers was not unduly suggestive where the other pictures did not contain mug shot markers, and also that an array picturing a defendant without mug shot markers was not unduly suggestive even though all other defendants' pictures did have mug shot markers. *See United States v. Tyler,* 714 F.2d 664, 667-68 (6th Cir.1983); *United States v. Perry,* 991 F.2d 304, 311 (6th Cir.1993). The minor differences in the pictures here are less suggestive than the absence or presence of mug-shot markers. Therefore, in light of the many similarities between the men pictured, the photo spread was not unduly suggestive.

*United States v. Reamy*, 132 Fed.Appx. 613, 617, unpublished, 2005 Fed. App. 0423N (6th Cir. May 23, 2005).

Claim three is without merit.[1]

## VI. CLAIM FOUR

In claim four, petitioner asserts that he was denied a fair trial because the trial court denied his motion to suppress evidence as obtained in violation of the Fourth Amendment. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim... a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell,* 428 U.S. 465, 494 (1976)[footnotes omitted]. The United States Court of Appeals for the Sixth Circuit has interpreted *Stone* to require only that the state courts "take cognizance of the constitutional claim and render a decision in light thereof. There is no mandate that in announcing a decision such court fully expound upon such alleged error." *Moore v. Cowan,* 560 F.2d 1298, 1301 (6th Cir. 1977); *see also Riley v. Gray,* 674 F.2d 522, 526 (6th Cir. 1982), *cert. denied,* 459 U.S. 948 (1982); *Northrop v. Trippett,* 265 F.3d 372, 378 (6th Cir. 2001), *cert. denied,* 535 U.S. 955 (2002).

Petitioner argues that the state appellate court inaccurately concluded that he had not contested the state trial court's conclusion that he lacked standing to contest the police search of the duffel bag. *Traverse,* at 4. Petitioner further contends that the state appellate court improperly applied Supreme Court precedent. *Id.* The record reflects that the state appellate court denied petitioner's claim in relevant part as follows:

> [D]efendant contends that the trial court erred and abused its

---

[1] Petitioner also argued before the state appellate court that Jacob Sahle's out-of-court identification of him from a photo line up was constitutionally impermissible; however, petitioner does not raise this claim in this federal habeas corpus petition.

> discretion when it overruled defendant's motion to suppress the search of the black duffel bag, which had been in Williams' possession....
>
> The trial court held that defendant did not have standing to challenge the motion to suppress regarding the black duffel bag Williams was carrying when the two men were involved in the accident in Guernsey County.   It has long been recognized that Fourth Amendment rights are personal rights which may not be vicariously asserted.  *Rakas v. Illinois* (1978), 439 U.S. 128.   As such, a defendant's Fourth Amendment rights are only violated when the challenged conduct invaded his own legitimate expectation of privacy rather than that of a third party.  *United States v. Payner* (1980), 447 U.S. 727.
>
> Defendant does not challenge the trial court's determination that he did not have standing to challenge the motion to suppress regarding the black duffel bag.  However, in light of the potential prejudice and the seriousness of the charges, we will address the issue as if defendant does have standing.

Exhibit 20 to Return of Writ.  Thus, the state appellate court assumed that petitioner had standing to challenge the search of the black duffel bag despite the trial court's conclusion to the contrary. Further, the record does not reflect that state courts refused to "discuss or apply controlling Supreme Court precedent."  *See Gilbert v. Parke*, 763 F.2d 821, 824 (6th Cir. 1985), citing *Gamble v. Oklahoma*, 582 F.2d 1161, 1165 (10th Cir. 1978).

> [T]he state court need do no more than "take cognizance of the constitutional claim and rule in light thereof.."

*Riley v. Gray, supra*, 674 F.2d at 524, citing *Moore v. Cowan*, 560 F.2d 1298, 1302 (6th Cir. 1977).

The United States Court of Appeals for the Sixth Circuit has held that a federal habeas Court  may not second guess the state court's decision:

26

> [The United States Court of Appeals for the Sixth Circuit] in *Riley*
> declined to adopt that portion of *Gamble* [*v. Oklahoma*, 582 F.2d
> 1161 (10th Cir. 1978)] permitting federal review of egregious
> substantive errors committed by state courts on Fourth Amendment
> claims. 674 F.2d at 525-26. Since the Kentucky courts provided... a
> full and fair opportunity to litigate... Fourth Amendment claims,
> second-guessing the [state courts] on the merits would be inconsistent
> with *Stone v. Powell. See Riley*, 674 F.2d at 526. *Stone v. Powell*
> made clear that no substantial deterrent purpose is served by
> reversing state convictions on collateral attack on Fourth Amendment
> grounds. 428 U.S. at 493, 96 S.Ct. at 3051. Deterrence is, of course,
> the rationale underlying the exclusionary rule. *Id.* at 484-86, 96 S.Ct.
> at 3047-48.

*Gilbert v. Parke, supra*, 763 F.2d at 824. Petitioner does not allege, and the record does not reflect, that the state courts failed to provide him a full and fair opportunity to present his Fourth Amendment claim.

Claim four, therefore, is inappropriate for federal habeas corpus review.

## VII.  CLAIM FIVE

In claim five, petitioner asserts that the evidence is constitutionally insufficient to sustain his conviction on aggravated robbery, robbery, and kidnapping charges that involved Ed Maleszewski and the State Employees Credit Union.

The state appellate court rejected this claim as follows:

> In overruling defendant's Crim.R. 29 motion as it relates to the
> robbery of the SECU, the trial court noted that the photo showing two
> individuals outside the credit union looking straight at the camera
> inside the bank was sufficient to find that reasonable minds could
> differ on the issue of whether or not that picture was of defendant and
> Williams. Furthermore, the court noted that the testimony indicating
> that defendant and Williams were in Guernsey County shortly after
> the robbery of the credit union was sufficient circumstantial evidence
> for reasonable minds to differ as to whether defendant and Williams

had, in fact, committed the robbery. The same evidence tying defendant and Williams to the SECU robbery, also tied them to the robbery of Ed Maleszewski. Those robberies occurred within seconds of each other and the jury could reasonably conclude that the same men who committed the robbery at the SECU also robbed Maleszewski of his cellular phone.

\*\*\*

Defendant notes that none of the tellers or customers inside the SECU were able to identify him. However, Maleszewski indicated that photos five and six were close in appearance to those who had robbed him. Photo five was of defendant. The camera outside the SECU took a picture of two men taken shortly before the robbery. According to the trial judge, the photo bore a reasonable resemblance to defendant and Williams. In a general sense, defendant and Williams matched the description of the men who had robbed the credit union, including the general description of the clothing which they were wearing. The automobile used in the SECU robbery was registered to Williams' brother, and Williams and defendant were in that car when it crashed in Guernsey County. Furthermore, defendant and Williams were found in possession of a large sum of money taken from the credit union, which also contained bank bands and dye packs. While it is correct that, in their testimony, both defendant and Williams maintained their innocence, this court finds that the judgment of conviction was not against the manifest weight of the evidence. Defendant's ninth assignment of error is overruled.

Exhibit 20 to Return of Writ.  Again, the decision of the state appellate court is entitled to deference. 28 U.S.C. §2254(d), (e).  Petitioner has failed to establish that such decision is so unreasonable as to justify federal habeas corpus relief.  *See Williams v. Taylor, supra*.

Before a criminal defendant can be convicted consistent with the United States Constitution, there must be sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  To determine whether the evidence was sufficient to support a conviction, this Court must view the evidence in the light most favorable to

28

the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992)(citing *Jackson,* at 319).  The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt."  *Id*. (quoting *Jackson*, at 326).  "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  *Id*. (quoting *Jackson*, at 326).  For example the trier of fact is entitled to disbelieve a defendant's uncorroborated and confused testimony, and even to discount a defendant's credibility on account of a prior felony conviction.  *Id*.

Petitioner was convicted of one count of aggravated robbery involving the SECU, and one count of aggravated robbery involving Ed Maleszewski, in violation of O.R.C. 2911.01(A)(1), and (A)(2), which provide:

> (A) No person, in attempting or committing a theft offense... or in fleeing immediately after such attempt or offense, shall do either of the following:
>
> (1) Have a deadly weapon or dangerous ordnance... on or about his person or under his control;
>
> (2) Inflict, or attempt to inflict serious physical harm on another.

*See* Exhibit 2 to Return of Writ.  He also was convicted of two counts of robbery involving the SECU, and two counts of robbery involving Edward Maleszewski, in violation of O.R.C. §2911.02, which provides:

> (A) No person, in attempting or committing a theft offense... or in fleeing immediately after such attempt or offense, shall use or threaten the immediate use of force against another.
>
> (B) Whoever violates this section is guilty of robbery, an

29

aggravated felony of the second degree.

*See id.* Additionally, petitioner was convicted of kidnapping Edward Maleszewski, in violation

of O.R.C. §2905.01, which provides in relevant part:

> (A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where he is found or restrain him of his liberty, for any of the following purposes:
>
> ***
>
> (3) To terrorize, or to inflict serious physical harm on the victim or another;
>
> ***
>
> (C) Whoever violates this section is guilty of kidnapping, an aggravated felony of the first degree. If the offender releases the victim in a safe place unharmed, kidnapping is an aggravated felony of the second degree.

*See id.* All of the foregoing convictions contained specifications for use of a firearm pursuant to

O.R.C. §2941.145, which provides in relevant part:

> (A) Imposition of a three-year mandatory prison term upon an offender under division (D)(1)(a) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense. The specification shall be stated at the end of the body of the indictment, count, or information, and shall be stated in substantially the following form:
>
> "SPECIFICATION (or, SPECIFICATION TO THE FIRST COUNT). The Grand Jurors (or insert the person's or the prosecuting attorney's name when appropriate) further find and specify that (set

> forth that the offender had a firearm on or about the offender's person
> or under the offender's control while committing the offense and
> displayed the firearm, brandished the firearm, indicated that the
> offender possessed the firearm, or used it to facilitate the offense)."

The robbery and aggravated robbery convictions in counts two, three, five, six and seven were merged with petitioner's convictions in counts one and four at sentencing. *See* Exhibit 12 to Return of Writ.

In addition to the evidence discussed by the state appellate court, the record reflects that two African American men robbed the SECU with a sawed-off shotgun. Maleszewski entered the building while the robbery was in progress:

> I seen people lying on the floor...
>
> ***
>
> I... heard somebody saying put the money in the bag, put the money
> in the bag...
>
> I immediately knew something was wrong and backed out of there.

*Transcript*, at 1594-1595. Maleszewski was attempting to call 911 on his cell phone when the robbers exited the building. *Id.*, at 1596-1597. One of the men had a gun. *Id.*, at 1598. The shorter of the two men grabbed Maleszewski's arm and demanded his cell phone. *Id.* They struggled, but Maleszewski gave the man his phone when he saw the second robber returning with a gun. *Id.* Maleszewski watched the two men leave in a white older model LTD. *Id.*, at 1600. He identified the photograph of the car that petitioner and Williams later crashed in as the same vehicle used by the armed robbers of the SECU. *Id.,* at 1601. Jacob Sahle, the parking attendant, also saw the two

31

men escape in a large white LTD. *Id.*, at 1866-1867; 1877-1878.  As discussed by the state appellate court, petitioner and co-defendant Ronald Williams were found later that day in a car that matched the description of that used in the SECU robbery.  Williams had a black duffel bag that contained money and dye packs from the SECU. *See* Exhibit 20 to Return of Writ.  Petitioner does not dispute the factual findings of the state appellate court.

Upon review of the record, this Court likewise concludes that, when viewing all of the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia, supra*, the evidence is constitutionally sufficient to sustain petitioner's convictions on the charges referred to.  Under *Jackson v. Virginia, supra,*

> [c]ircumstantial evidence may support the conviction, *see Wiley v. Sowders,* 669 F.2d 386, 390 (6th Cir.1982) (*per curiam*); and such evidence need not remove every reasonable hypothesis except that of guilt. *See United States v. Vannerson,* 786 F.2d 221, 225 (6th Cir.), *cert. denied,* 476 U.S. 1123 (1986).

*Moore v. Carlton*, 899 F.2d 14, unpublished, 1990 WL 39427 (6th Cir. April 6, 1990).

Claim five is without merit.

## VIII.  CLAIM SIX

In claim six, petitioner asserts that he was denied a fair trial due to admission of fingerprint evidence against him, in violation of *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 592-93 (1993).

The state appellate court rejected this claim as follows:

> [D]efendant contends that the trial court erred and abused its discretion in overruling his objection to fingerprint evidence. Defendant argues that the state's expert's testimony indicating that

32

defendant's fingerprint matched the set of prints lifted from Gracie's Flower Market is inadmissible where no scientific evidence or basis has been offered or accepted validating such a procedure. As such, defendant contends that he was denied a fair trial.

Evid.R. 702 relates to testimony by experts and provides as follows:

A witness may testify as an expert if all of the following apply:

> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons:
>
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
>
> (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
>
> (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
>
> (2) The design of the procedure, test, or experiment reliably implements the theory;
>
> (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

Defendant argues that there has never been a scientific study or test by reliable experts to establish the reliability of fingerprint evidence. Defendant asserts that the use of fingerprint evidence to conclusively identify a perpetrator results in a denial of due process guarantees.

In the present case, the trial court held a hearing prior to trial in which the state's fingerprint expert offered testimony regarding his practice and gave a general discussion of the history of fingerprint comparisons. Paul R. Bivens works for the Columbus Police Department in the Latent Print Unit. Bivens testified concerning the

33

general process of latent print identification and noted that there are eight points of comparisons and verifications when dealing with latent fingerprints. Bivens indicated that studies indicate that everybody's fingerprints are unique. Bivens also stated that the error rate is essentially zero. Additionally, Bivens stated that, through peer review, errors can be minimized. Bivens then discussed his comparison of the print lifted from Gracie's Flower Market with the print he had for defendant, and how he made the comparison. The defense cross-examined Bivens but offered no evidence of its own.

The trial court has discretion concerning admissibility of expert testimony. An appellate court should not disturb the trial court's rulings on appeal absent a showing of an abuse of discretion. *Frank v. Vulcan Materials Co.* (1988), 55 Ohio App.3d 153, 563 N.E.2d 339. The trial judge is considered the gate keeper of evidence and must continue to have considerable discretion in deciding in a particular case how to go about determining whether particular expert testimony is reliable. *Kumho Tire Co. v. Carmichael* (1999), 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (interpreting Federal Evid.R. 702). In *United States v. Havvard* (2000), 117 F.Supp.2d 848, the defendant contended that opinion evidence on latent fingerprint identification does not meet the standards for reliability for admissible expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469; *Kumho Tire Co.,* supra.

In *Havvard,* at 850, the court noted as follows:

*Daubert* and *Kumho Tire* require district judges to act as "gatekeepers" of expert testimony, to ensure that proffered expert testimony is sufficiently (a) relevant and (b) reliable to justify its submission to the trier of fact. *See Kumho Tire,* 526 U.S. at 152, 119 S.Ct. 1167, 143 L.Ed.2d 238; *Daubert,* 509 U.S. at 589, 113 S.Ct. 2786, 125 L.Ed.2d 469. * * *

As the court noted, the issue is not relevance; instead, the issue is reliability. The court noted further that, in *Daubert,* the court identified several factors that may be relevant in evaluating the reliability of an expert's method for developing a relevant professional opinion. Those include the following:

* * * [W]hether the theory or technique can be and has been tested;

34

whether it has been subjected to peer review and publication; whether there is a high known or potential rate of error; whether there are standards controlling the technique's operations; and whether the theory or technique enjoys general acceptance within a relevant scientific or expert community. *See Kumho Tire,* 526 U.S. at 149-50, 119 S.Ct. 1167, 143 L.Ed.2d 238, citing *Daubert,* 509 U.S. at 592-594, 113 S.Ct. 2786, 125 L.Ed.2d 469.

The court went on to note that, for decades, trial courts have permitted persons trained and experienced in latent fingerprint identification to testify about their opinions as to whether a given individual was a source of a latent fingerprint. The court noted further that the parties did not call to the court's attention any unreported cases rejecting fingerprint identification opinion testimony. In *Havvard,* the court discussed the testimony given by the fingerprint expert as to how latent fingerprints are taken, how they are compared and noted claims of uniqueness and permanence. The court concluded that the explanation made sense and that the court accepted it. As in the present case, all positive identification opinions are verified by a second qualified expert. The court concluded that, despite the absence of a single qualifiable standard for measuring the sufficiency of any latent fingerprint for purposes of identification, the court was satisfied that the latent fingerprint identification easily satisfied the standard of reliability in *Daubert* and *Kumho Tire.*

Upon review, this court adopts the well-reasoned opinion of the district court in *Havvard* and finds the trial court did not err and abuse its discretion in permitting the testimony.

Exhibit 20 to Return of Writ.

Federal habeas review of state court evidentiary rulings is extremely limited. *Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990). Evidentiary questions generally do not rise to a constitutional level unless the error was so prejudicial as to deprive a defendant of a fundamentally fair trial, thereby violating due process. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *see also Walker v. Engle,* 703 F.2d 959, 962 (6th Cir. 1983). When such errors are alleged, the federal court's inquiry in reviewing these claims is directed to whether the evidence was rationally

connected to the crime charged. *Carter v. Jago*, 637 F.2d 449, 457 (6th Cir. 1980). Such are the circumstances here. Further, *Daubert v. Merrell Dow Pharmaceuticals Inc., supra*, 509 U.S. at 579, concerns the Federal Rules of Evidence, and does not govern whether fingerprint evidence in state court proceedings is constitutionally admissible. *See Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998); *Kelly v. Larkins*, 251 F.3d 408, 419 (2nd Cir. 2001); *Kinder v. Bowersox*, 272 F.3d 532, 545 n.9 (8th Cir. 2001).

Claim six is without merit.

## IX.  CLAIM SEVEN

In claim seven, petitioner asserts that the trial court's imposition of maximum consecutive sentences constitutes cruel and unusual punishment. The state appellate court denied this claim as follows:

> [D]efendant contends that the trial court erred and abused its discretion in imposing maximum sentences, running the sentences consecutively, failing to merge counts, and in failing to make necessary findings.
>
> Defendant contends that the trial court erred in permitting convictions and entering sentence on the robbery counts involving Maleszewski, Fryman and Athey. Defendant contends that those robberies should have merged with the convictions for the SECU robbery and the Village Petals robbery, as the offenses were committed as one continuous act and were committed with a single animus.
>
> R.C. 2941.25 provides as follows:
>
> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts of all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a

separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

The Ohio General Assembly permits cumulate punishment as long as the offenses in question do not constitute allied offenses of similar import. R.C. 2941.25(B); *see, also*, *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699. When the statutorily defined elements of two crimes " 'correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import.' " *State v. Jones* (1997), 78 Ohio St.3d 12, 676 N.E.2d 80, quoting *State v. Blankenship* (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816. In engaging in this comparison, the court should examine the statutorily defined elements of the offenses in the abstract, not in the particular facts of the case before it. *Rance,* at 638, 710 N.E.2d 699. If the offenses constitute allied offenses of similar import, the defendant cannot be convicted of both unless the defendant committed the crimes separately or with a separate animus. *Id.* at 639, 710 N.E.2d 699, citing R.C. 2941.25(B), and *Jones,* at 14, 676 N.E.2d 80.

The five counts of aggravated robbery with which defendant was charged relating to this assigned error necessarily involved the same elements. Thus, this court must determine whether the offenses were committed separately or with a separate animus as to each within the meaning of R.C. 2941.25(B).

Where a defendant commits the same offense against different victims during the same course of conduct, a separate animus exists for each offense. *State v. Byrd* (1987), 32 Ohio St.3d 79, 512 N.E.2d 611. In *Byrd,* the court found that defendant's robbery of a store cash register and robbery of a store clerk's personal possessions constituted separate crimes having a separate animus. *See, also*, *State v. Jones* (June 13, 2000), Franklin App. No. 99AP-704.

In this case, each offense committed by defendant was perpetrated against a different victim and each victim was forced to relinquish their property to defendant. Although the SECU robbery and the robbery of Maleszewski occurred during one course of conduct, this court finds that each robbery was committed with a separate animus. Likewise, while the robbery of the Village Petals and Fryman and Athey occurred during one course of conduct, we likewise find that each robbery was committed with a separate animus. Accordingly, defendant was properly convicted and sentenced on each of these

37

aggravated robberies in accordance with his conduct.

Defendant also contends that the sentences imposed by the trial court were disproportionate to the crimes for which defendant was convicted, is contrary to the purposes of sentencing, and that defendant was entitled to being sentenced to the minimum sentence possible.

R.C. 2929.11 provides two overriding purposes of felony sentencing: protecting the public from future crime of the offender and others, and punishing the offender. When sentencing a felony offender, a trial court must impose a sentence which is reasonably calculated to achieve these two overriding purposes. *See State v. Dalton,* Franklin App. Nos. 02AP-178 and 02AP-179, 2002-Ohio-5171.

The trial court has broad discretion when sentencing within the statutory guidelines. A reviewing court may not disturb a sentence imposed by a trial court unless it finds by clear and convincing evidence that the sentence is not supported by the record, or is contrary to law. *Dalton, supra.*

R.C. 2929.14(E)(4) provides that the court may impose consecutive sentences for conviction of multiple offenses if the court finds that consecutive sentences are necessary to protect the public from future crime or to punish the offender, that the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future

crime by the offender.

When a trial court imposes consecutive sentences under R.C. 2929.14, it must also comply with R.C. 2929.19(B)(2)(c), which mandates that the court make a finding as to its reasons for selecting the sentences imposed. R.C. 2929.12(A) confers upon the trial court discretion in how to effectively comply with the purposes and principles of sentencing set forth in R.C. 2929.11. R.C. 2929.12(A) further provides that, in the exercise of such discretion, courts must consider the applicable aggravating and mitigating factors in the statute.

In the present case, the trial court provided the following reasoning for imposing consecutive prison terms:

The Court has done a couple of things here that need certain findings on the record. First of all I gave more than a minimum sentence to this Defendant. This was a series of aggravated robberies, armed, some of them committed while charges were pending on earlier cases, one of them committed after he had been arrested for an earlier one and he was out of bond, or if not on bond, he was out as a result of some sort of a snafu through the police department or the jail, it's beyond me why he was ever out at large to commit the latter robberies, but at any rate the Court finds based upon that and the totality of the circumstances involving the use of the weapon, multiple victims, that the shortest prison term would demean the seriousness of the offender's conduct and will not adequately protect the public from future crimes by this offender and by others.

These sentences are consecutive, and what the Court finds here based upon the same things that I have outlined is that the consecutive sentence is necessary to protect the public from future crime and to punish this offender. They're not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.

I find that the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct, and although he hasn't a serious -- any kind of record, this behavior in and of itself is a record of sorts. This criminal conduct demonstrates that these consecutive sentences are necessary to protect the public from potential future behavior from him.

It appears that the trial court found that all three provisions of R.C. 2929.14(E)(4) apply to justify consecutive sentences. After defendant was arrested in connection with the robberies of Village Petals and Gracie's Flower Market, defendant was released from custody. The record is unclear whether defendant was released on bond or if, at that point and time, the police failed to charge him. In any event, there was insufficient proof that defendant was "awaiting trial or sentencing" for R.C. 2929.14(E)(4)(a) to apply. Even though the evidence does not support a finding of (a), there is evidence to support a finding under (c) and (b). In the finding under R.C. 2929.14(E)(4)(c), the court is justified in taking into account defendant's conduct in committing additional offenses while free from jail (for whatever reason) after the initial charges. Perhaps that is what the trial judge meant as he analyzed all of defendant's conduct to fully justify a finding under R.C. 2929.14(E)(4)(b) and (c).

Exhibit 20 to Return of Writ.

Petitioner does not appear to assert in this federal habeas corpus petition that his sentence violates state law. As previously discussed, the alleged violation of state law is not appropriate for federal habeas corpus review. 28 U.S.C. §2254(a). *Pulley v. Harris*, *supra*, 465 U.S. at 41; *Smith v. Sowders*, *supra,* 848 F.2d at 738. Further, the record fails to reflect that petitioner's sentence violates the Eighth Amendment. In *United States v. Beverly*, 369 F.3d 516, 536-537 (6th Cir. 2004), the United States Court of Appeals for the Sixth Circuit upheld a sentence of 71 ½ years imposed on a defendant with no prior convictions convicted as the getaway driver in four armed bank robberies. The Sixth Circuit concluded such sentence was constitutionally permissible:

The "narrow proportionality principle," means that only "extreme sentences that are grossly disproportionate to the crime are prohibited." *Flowal,* 163 F.3d at 963-64. A plurality of the Court rejected the defendant's assertion that his life term without parole was disproportionate because it was his first felony conviction. *Harmelin v. Michigan,* 501 U.S. 957, 994, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Instead, the Court observed that the defendant had been convicted of possession of more than 650 grams of cocaine and held that Michigan could determine that the seriousness of the offense warranted the severe sentence. *Id.* at 990, 111 S.Ct. 2680.

40

Here, too, [defendant] has never been convicted of a felony before. However, he was convicted of participating in four separate armed bank robberies. Even though his role was to drive the getaway car, he was fully aware of the crime he was participating in and thus his culpability is not diminished. Furthermore, at least one of the guns used in the course of the robberies was traced back to [defendant], who had purchased it in 1993 and had given it to [another participant in the offenses. Defendant] was sentenced to five years for the first of four counts of armed bank robbery brought pursuant to 18 U.S.C. § 2113(a) and (d) and to twenty years for the remaining three counts, to run consecutively. No one of these sentences is intrinsically "grossly disproportionate" to the crime of armed bank robbery. Mandating consecutive sentences is not an unreasonable method of attempting to deter a criminal, who has already committed several offenses using a firearm, from doing so again. *See Harmelin,* 501 U.S. at 994, 111 S.Ct. 2680 (stating that mandatory penalties are not "unusual in the constitutional sense").

\*\*\*

... [A]lthough the length of time to be served... is severe, it would appear to serve the twin goals of retribution and deterrence, without being grossly disproportionate to the several offenses committed. The Supreme Court has never held that a sentence to a specific term of years, even if it might turn out to be more than the reasonable life expectancy of the defendant, constitutes cruel and unusual punishment. *See Harmelin,* 501 U.S. at 996, 111 S.Ct. 2680. In the absence of such guidance, we see no principle on which such a result could be based, and we decline to establish such a principle here. *But see Ramirez v. Castro,* No. 02-56066, 365 F.3d 755, 2004 WL 868517 (9th Cir. Apr.19, 2004) (holding 25 years-to-life sentence for three shoplifting convictions, two of which occurred in 1991, violated the Eighth Amendment).

*Id.* Similarly, in *Harmelin, supra,* 501 U.S. at 957, the United States Supreme Court upheld the state court's sentence of life without possibility of parole for a defendant with no prior record convicted of possession of more than 650 grams of cocaine. The Supreme Court held:

Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense.

41

*Id.*, at 994.

Here, petitioner was sentenced to an aggregate term of 52 years on aggravated robbery, kidnapping, and robbery convictions, with firearm specifications. His sentences do not constitute cruel and unusual punishment in contravention of the Eighth and Fourteenth Amendments.

In view of the foregoing, claim seven is without merit.

## X. CLAIM EIGHT

In claim eight, petitioner asserts that he was denied a fair trial due to prosecutorial misconduct. Specifically, petitioner complains that the prosecutor improperly stated in closing argument:

> The police are looking for this van, and they find the van. And Marilyn Williams is driving it. And she tells them she wasn't driving it earlier, but her brother Ronny and his friend were, and they can be found at 693 Bedford.

*Transcript,* at 2247. Petitioner argues that the foregoing statement was improper, because Williams "consistently denied" that she had made any such statement to police. *Petition,* at 9.

The state appellate court denied this claim as follows:

> [D]efendant contends that the state was guilty of prosecutorial misconduct when, during closing argument, the prosecutor indicated that it was Marilyn Williams, Williams' sister, who had told the police that Williams and his friend had been driving the van earlier and could be found at 693 Bedford.
>
> The test for prosecutorial misconduct is whether the prosecution's conduct was improper and, if so, whether the conduct prejudicially affected substantial rights of the accused. *Lott,* at 165, 555 N.E.2d 293. " ' "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78. As such, misconduct is not grounds for reversal unless the defendant has been denied a fair trial. *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, 473 N.E.2d 768,

*certiorari denied* (1985), 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed.2d
728.' " *Wilkerson,* at ¶ 38.

Defendant has failed to allege or otherwise demonstrate that, but for
the statement made by the prosecutor during closing argument,
defendant would not have been convicted. The statement that
Williams and a friend of his had been driving the van earlier in the
day and could be located at the Bedford Avenue address actually
came from an occupant of Marilyn Williams' van and not from
Marilyn Williams herself. The statement itself was admissible to
explain why the police proceeded to the Bedford address. The
misstatement during argument to which there was no objection
appears to be of no consequence. Furthermore, the trial court
instructed the jury that the evidence does not include the indictment,
nor the opening statements, nor the closing arguments of counsel.
Because defendant has not demonstrated that he was denied a fair
trial, defendant's eighth assignment of error is overruled.

Exhibit 20 to Return of Writ. Again, the state appellate court's decision is entitled to a presumption

of correctness pursuant to §2254(d), (e), and petitioner has failed to establish any reason to disturb

that decision here. *See Williams v. Taylor, supra.*

The scope of federal habeas corpus review of a claim of prosecutorial misconduct is narrow.

A federal court does not sit as an appellate court employing supervisory powers to rectify ordinary

trial error in cases before it for habeas review. *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).

Rather, the Court must consider only whether the prosecutor's conduct was so egregious as to deny

the petitioner fundamental fairness. *Id.*, at 642-43; *Martin v. Foltz*, 773 F.2d 711, 716-17 (6th Cir.

1985); *Angel v. Overberg*, 682 F.2d 605, 607 (6th Cir. 1982)(en banc). This determination is made

by evaluating the totality of the circumstances surrounding the case. *Angel v. Overberg*, 682 F.2d

at 607.

Factors relevant in making this inquiry are: the degree to which the
remarks may tend to mislead the jury and to prejudice the accused;

43

> whether the remarks were isolated or extensive; whether they were
> deliberately placed before the jury; and the strength of the case
> against the accused.  Finally, this Court notes the "extreme nature of
> the prosecutorial misconduct required for a federal court to issue the
> writ."

*Martin v. Foltz*, 773 F.2d at 716 (citations omitted)(quoting *Cook v. Bordenkircher*, 602 F.2d 117,

120 (6th Cir. 1979).  Upon review of the record and for the reasons discussed by the state appellate

court, this Court agrees that petitioner has failed to establish any prejudice from the isolated factual

mis-statement by the prosecutor during closing argument.

Claim eight is without merit.

## XI.  CLAIM NINE

In claim nine, petitioner asserts that he was denied a fair trial because

> the court allowed Ed Maleszewski, Chris Fryman and Betty Athey to,
> after not being sure of identity of the assailants, to speculate [that]
> Payne and Williams were the criminals.  The Court did the same with
> Jacob Sahle.

*Petition,* at 9.  Petitioner also asserts in claim nine that he was denied a fair trial because Officer

William Kaufman testified that an unidentified female told Kaufman that  Williams and Payne had

been driving a white van the day that Gracie's Flower Market was robbed.  *Id.*   The state appellate

court rejected this claim as follows:

> ... [D]efendant contends that the trial court erred and abused its
> discretion in admitting certain evidence over defendant's objection.
> For the reasons that follow, this court overrules defendant's seventh
> assignment of error.
>
> "Relevant evidence" is defined in Evid.R. 401, as follows:

44

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Pursuant to Evid.R. 402, all relevant evidence is admissible unless otherwise provided. Evid.R. 403, which pertains to the exclusion of relevant evidence on grounds of prejudice, confusion, or undue delay, provides as follows:

(A) Exclusion mandatory

Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

(B) Exclusion discretionary

Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.

Defendant contends that Maleszewski, Sahle, Fryman and Athey were permitted to speculate regarding their identification of defendant. Specifically, Maleszewski was permitted to say that the people numbered five and six on the photo array were closest to the people who robbed him. As noted previously, Sahle was permitted to testify that defendant looked to be the man who had driven the car into his lot. Fryman was able to identify defendant from the photo array but was unable to identify him in court. Athey was unable to identify anyone from the photo array, then indicated in court that Williams looked familiar to her.

First, with regard to Maleszewski, Sahle and Fryman, all three of those witnesses had been able to identify defendant in the photo array. In order for the evidence to be excluded under Evid.R. 403, defendant must show that the probative value is substantially outweighed by the danger of unfair prejudice. Defendant has not challenged the photo arrays put together by the police; instead, he challenges the witness' positive identification based upon the fact that none of them stated that they were absolutely certain that the men in

45

the photo array were the men who robbed them. This court finds that the fact that they selected defendant's photograph from a photo array within a short time after the robberies were committed is relevant to the trial. The probative value of these eyewitnesses being able to select defendant from a photo array was highly relevant to the state's case.

With regard to the testimony of Athey, this court notes that her testimony indicating that Williams looked familiar to her was relevant. Athey was unable to identify defendant from the photo array or when she was in court, and defendant was not prejudiced by this testimony.

Defendant also challenges the testimony of Officers Kaufman and Boespflug regarding the statement made by one of the passengers in the van driven by Marilyn Williams. The officers had testified that, after the van had been pulled over, one of the occupants informed the police that Williams and a friend had driven this van earlier in the day and were currently at the address of 693 Bedford Avenue. Defendant contends that this testimony was hearsay and should not have been permitted.

Hearsay is defined in Evid.R. 801 as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Where an out-of-court statement is offered without reference to its truth, the statement is not hearsay. Furthermore, statements which are offered to explain a police officer's conduct while investigating the crime are not hearsay. *See State v. Lewis* (1970), 22 Ohio St.2d 125, 258 N.E.2d 445, and *State v. Blevins* (1987), 36 Ohio App.3d 147, 521 N.E.2d 1105.

In the present case, the police had a description of a white Ford Aerostar van and a license plate number. After a check of records, the police learned that the van was registered to an address on Champion Avenue. The police then took steps to watch the address on Champion Avenue looking for the van. When the officers pulled the van over while Marilyn Williams was driving it, they ordered the occupants out of the van. It became apparent that neither defendant nor Williams were in the van. The police asked Marilyn Williams, as well as the other occupants of the van, if they had been driving the van earlier. One of the occupants informed the police that Williams

and a friend had driven the van earlier in the day and that they could be found at the address on Bedford. The testimony concerning the statement made by the person in the van regarding who was driving the van earlier was offered to explain why the police ultimately decided to proceed to the Bedford address where defendant and Williams were ultimately apprehended. The statement was admissible.

Exhibit 20 to Return of Writ.

As discussed, federal habeas review of state evidentiary rulings is extremely limited. *Waters v. Kassulke, supra,* 916 F.2d at 335. Evidentiary questions generally do not rise to a constitutional level unless the error was so prejudicial as to deprive a defendant of a fundamentally fair trial, thereby violating due process. *Cooper v. Sowders, supra,* 837 F.2d at 286; *Walker v. Engle, supra,* 703 F.2d 962. Upon review of the record, and for the reasons discussed by the state appellate court, such are not the circumstances here.

Claim nine is without merit.

## XII.  CLAIM TEN

In claim ten, petitioner asserts that his sentence violates *Blakely v. Washington,* 542 U.S. 296 (2004).[2]

─────────────────

[2] Petitioner asserts in his petition that his sentence violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000); however, in his traverse petitioner argues that his sentence violates *Apprendi* as that case was later defined in *Blakely v. Washington, supra. Traverse,* at 9. As noted by respondent, petitioner never raised in the state courts any *Apprendi* claim. Such claim, therefore would be procedurally defaulted. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Further, the Supreme Court in *Apprendi v. New Jersey, supra*, 530 U.S. at 490 held:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.

> In *Blakely*, the Supreme Court reversed a sentence imposed under the State of Washington's determinate sentencing scheme after finding the trial judge had enhanced the defendant's kidnaping sentence beyond the statutory maximum based upon his own finding, by a preponderance of the evidence, the defendant had acted with "deliberate cruelty." 124 S.Ct. at 2537-38. In doing so, the Supreme Court reiterated its previous holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000), but clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 124 S.Ct. at 2537.

*United States v. Bucheit*, 134 Fed.Appx. 842, unpublished, 2005 Fed.App. 0431N (6th Cir. May 23, 2005). However, petitioner's conviction became final in April 2004, ninety days after the Ohio Supreme Court's January 21, 2004, decision dismissing his appeal, when the time period expired to file a petition for a *writ of certiorari* to the United States Supreme Court. *See Humphress v. United States,* 398 F.3d 855, 860 (6th Cir. 2005). *Blakely* was decided on June 24, 2004, and is not retroactively applicable to cases on collateral review. *See Humphress v. United States, supra*. Therefore, *Blakely* does not provide petitioner the relief he seeks.

Claim ten is without merit.

Based upon all of the foregoing, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

---

*Id.* Petitioner does not allege that his sentence exceeded the prescribed statutory maximum for the offenses of conviction. Thus, the record fails to reflect that petitioner's sentence violated *Apprendi v. New Jersey, supra*, as that case had been interpreted at the time petitioner was sentenced.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation* *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

<u>February 27, 2006</u>                                         <u>      *s/Norah McCann King*      </u>
                                                                        Norah McCann King
                                                                        United States Magistrate Judge